**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALONZO LAMAR JOHNSON, | ) | |
| | ) | Civil Action No. 16 – 1250 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| BARBARA RICKARD and THE | ) | |
| ATTORNEY GENERAL OF | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is a Petition for Writ of Habeas Corpus ("Petition") filed by Alonzo Lamar Johnson ("Petitioner") pursuant to 28 U.S.C. § 2254 wherein he challenges his judgment of sentence entered by the Court of Common Pleas of Allegheny County, Pennsylvania at CC No. 200804649 on July 13, 2010.[1]  (ECF No. 6.)  Petitioner's judgment of sentence stems from his conviction for escape, possession with the intent to deliver a controlled substance and possession of a controlled substance.  For the following reasons the Petition will be dismissed for lack of jurisdiction and dismissed as untimely in the alternative.  Petitioner's renewed Motion for Discovery will be denied.

---

[1] The docket sheet for Petitioner's criminal case is a matter of public record and available for public view at https://ujsportal.pacourts.us/

### A.  **Relevant Procedural History**

#### 1.  **State court proceedings**

On April 5, 2007, Petitioner was arrested by Pittsburgh police and later charged at

Criminal Information No. CC 200804649 with one count each of escape, possession with intent

to deliver a controlled substance and possession of a controlled substance (hereinafter referred to

as "state criminal case").[2]  (Resp't Ex. 1, ECF No. 13-1, pp.1-17; Resp't Ex. 2, ECF No. 13-1,

pp.18-21.)  Petitioner waived his right to a trial by jury, and on April 23, 2009, he proceeded to a

bench trial before the Honorable David R. Cashman.  (Resp't Ex. 4, ECF No. 13-1, pp.31-35.)

The proceedings were adjourned following the morning session and were set to resume after

lunch; however, for some reason that is not clear from the record, the proceedings did not

resume.  Four-and-a-half months later, on September 9, 2009, Petitioner was arrested by federal

authorities pursuant to an arrest warrant on a federal indictment entered in the Western District

of Pennsylvania at Criminal Case No. 08-374, which charged him with conspiracy to distribute

and possess with intent to distribute 5 kilograms or more of a mixture and substance containing a

detectable amount of cocaine and 50 grams or more of a mixture and substance containing a

detectable amount of cocaine base (hereinafter referred to as "federal criminal case" and

discussed in the following section).  *See* United States v. Johnson, 2:08-cr-374, ECF Nos. 205,

273 (W.D. Pa.).  The government's motion to detain Petitioner pending those proceedings was

granted following a detention hearing on September 14, 2009.  Id., at ECF No. 292; *see also*

(Pet's Ex. 1, ECF No. 51-1, p.3.)

On March 25, 2010, an order was entered in Petitioner's state criminal case granting the

Allegheny County District Attorney's petition for writ of habeas corpus *ad prosequendum* and

---

[2] Petitioner was released on bond on April 6, 2007.

directing the United States Marshals and the Warden of the Northeast Ohio Correctional Center to produce Petitioner, who was in federal custody, for the remainder of his bench trial before Judge Cashman.  (Pet's Ex. 2, ECF No. 51-1, pp.5-7.)  The trial resumed on April 19, 2010, following which Judge Cashman found Petitioner guilty as charged.  (Resp't Ex. 2, ECF No. 13-1, pp.18-21.)  On July 13, 2010, Petitioner was sentenced to a three to six-year term of imprisonment, and his Order of Sentence reflects that he was given credit for 1 day he spent in the Allegheny County Jail on April 6, 2007.  (Pet's Ex. 3, ECF No. 51-1, pp.9-10.)  Post-sentence motions were denied on November 16, 2010.  (Resp't Ex. 7, ECF No. 13-1, pp.40-49; Resp't Ex. 8, ECF No. 13-1, pp.50-51.)

Petitioner subsequently appealed to the Superior Court of Pennsylvania, which was docketed at No. 1939 WDA 2010.  (Resp't Ex. 9, ECF No. 13-2, pp.1-4.)  Judge Cashman filed the trial court's opinion on September 27, 2011.  (Resp't Ex. 10, ECF No. 13-2, pp.5-11.)  Petitioner's appellate brief was filed on December 29, 2011.  (Resp't Ex. 11, ECF No. 13-2, pp.12-71.)  The Commonwealth's appellate brief was filed on February 3, 2012.  (Resp't Ex. 12, ECF No. 13-2, pp.72-95.)  Petitioner filed a reply appellate brief on March 23, 2012.  (Resp't Ex. 13-3, pp.1-21.)  On April 13, 2012, the Superior Court affirmed Petitioner's conviction and judgment of sentence.  (Resp't Ex. 14, ECF No. 13-3, pp.22-29.)  On May 10, 2012, Petitioner filed a Petition for Allowance of Appeal in the Pennsylvania Supreme Court, which was docketed at No. 213 WAL 2012.  (Resp't Ex. 15, ECF No. 13-4, pp.1-3; Resp't Ex. 16, ECF No. 13-4, pp.4-73.)  The Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal on September 13, 2012.  (Resp't Ex. 18, ECF No. 13-4, p.75.)  According to the docket sheet of the Pennsylvania Supreme Court at No. 213 WAL 2012, Petitioner did not file a Petition for Writ of Certiorari to the United States Supreme Court.

Petitioner next filed a *pro se* Petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA") on September 17, 2012.[3]  (Resp't Ex. 19, ECF No. 13-5, pp.1-11.)  The PCRA court subsequently appointed counsel to represent Petitioner in those proceedings; but, on February 6, 2013, counsel filed a Motion to Withdraw and a "no merit" letter pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988), and Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  (Resp't Ex. 20, ECF No. 13-5, pp.12-21.)  However, Petitioner's appointed counsel subsequently realized that Petitioner's sentence was illegal because the trial court did not make a determination of his eligibility for the Recidivism Risk Reduction Incentive ("RRRI") program at the time of sentencing as required, and, on February 12, 2013, he filed an Amended PCRA Petition seeking a new sentencing hearing.  (Resp't Ex. 21, ECF No. 13-5, pp.22-27.)  The Commonwealth filed an Answer on February 20, 2013, wherein they stated that although Petitioner was not RRRI eligible, this determination was not definitely made during the sentencing proceedings, and they requested that the court grant Petitioner's request to be resentenced with a RRRI eligibility finding.  (Resp't Ex. 22, ECF No. 13-5, pp.28-37.)  On February 26, 2013, Judge Cashman issued a Notice of Intent to Dismiss Petitioner's PCRA Petition.  (Resp't Ex. 23, ECF No. 13-5, pp.38-39.)  On March 19, 2013, Petitioner filed a Response to the Notice of Intent to Dismiss and a Motion for Newly Discovered Evidence.  (Resp't Ex. 24, ECF No. 13-5, pp.40-53.)  On April 9, 2013, Petitioner filed a second Motion for Newly Discovered Evidence.  (Resp't Ex. 25, ECF No. 13-5, pp.54-55.)  On April 9, 2013, Judge Cashman entered an Order: (1) denying all PCRA issues except for the RRRI issue; (2) vacating the previous sentencing order and issuing a finding that Petitioner

---

[3] This is the filing date pursuant to the prisoner mailbox rule.  *See* Houston v. Lack, 487 U.S. 266 (1988).

was RRRI ineligible, and; (3) permitting Petitioner's PCRA counsel to withdraw.  (Resp't Ex. 26, ECF No. 13-5, p.56.)  On April 25, 2013, the PCRA court vacated its original sentencing order and issued a new order of sentence.[4]  (Resp't Ex. 26, ECF No. 13-5, p.57.)  In addition to the one day of credit for time served at the Allegheny County Jail on April 6, 2007, the order of sentence granted Petitioner 1,018 days credit for time served at the Allegheny County Jail from July 13, 2010, the date of his original sentence, to April 25, 2013, the date of the new order of sentence.  Id.

On April 25, 2013, Petitioner filed an appeal of the PCRA court's order to the Superior Court, which was docketed at No. 840 WDA 2013.  (Resp't Ex. 27, ECF No. 13-6, pp.1-3.)  On February 10, 2014, Judge Cashman issued the PCRA court's opinion.  (Resp't Ex. 29, ECF No. 13-6, pp.9-18.)  On February 28, 2014, while Petitioner's appeal was pending in the Superior Court, Petitioner filed with the PCRA court a Motion for Reconsideration of the PCRA court's opinion.  (Resp't Ex. 42, ECF No. 13-9.)  On May 2, 2014, the Superior Court dismissed Petitioner's appeal for Petitioner's failure to file an appellate brief.  (Resp't Ex. 30, ECF No. 13-6, p.19.)  Petitioner moved the Superior Court to reinstate his appeal, but the Superior Court denied his application on September 19, 2014.  (Resp't Ex. 27, ECF No. 13-6, p.3.)  Petitioner filed another application to reinstate his appeal, which the Superior Court denied on October 10, 2014.  Id.  According to the docket for No. 840 WDA 2013, Petitioner did not file a Petition for Allowance of Appeal to the Pennsylvania Supreme Court.  (Resp't Ex. 27, ECF No. 13-6, p.3.)

Petitioner then filed an application in the PCRA court to reinstate his appeal on October 22, 2014.  (Resp't Ex. 31, ECF No. 13-7, pp.1-2.)  He also filed, on January 14, 2015, a Motion

---

[4] The state courts did not consider this to be a new sentence since it was the same sentence except for noting that Petitioner was not RRRI eligible.  (Resp't Ex. 35, ECF No. 13-8, p.12, FN 2.)

to Consider an Intervening Change in Law.  (Resp't Ex. 32, ECF No. 13-7, pp.3-14.)  On January 27, 2015, Judge Cashman entered an Order denying Petitioner's Motion for Reconsideration of the PCRA court's February 10, 2014 opinion, denying Petitioner's application to reinstate his appeal and denying his Motion to Consider an Intervening Change in Law.  (Resp't Ex. 33, ECF No. 13-7, p.15.)

As a result of the denial of his Motion for Reconsideration, his application to reinstate his appeal, and his Motion to Consider an Intervening Change in Law, Petitioner filed, on February 28, 2015, an appeal in the Superior Court that was docketed at No. 385 WDA 2015.  (Resp't Ex. 34, ECF No. 13-8, pp.1-4.)  Judge Cashman issued the PCRA court's opinion on June 12, 2015, in which he treated Petitioner's Motion to Consider an Intervening Change in Law as another PCRA petition and found it to be untimely.  (Resp't Ex. 35, ECF No. 13-8, pp.5-18.)  Petitioner's appellate brief was filed on July 31, 2015.  (Resp't Ex. 36, ECF No. 13-8, pp.19-39.)  The Commonwealth filed its appellate brief on September 30, 2015.  (Resp't Ex. 37, ECF No. 13-8, pp.40-63.)  On February 19, 2016, the Superior Court issued a Memorandum affirming the PCRA court's order finding that the PCRA petition was untimely and no exceptions to the timeliness requirements applied.  (Resp't Ex. 38, ECF No. 13-8, pp.64-73.)  Petitioner did not file a timely Petition for Allowance of Appeal following the Superior Court's resolution of his appeal, but he later filed with the Pennsylvania Supreme Court a Petition for Leave to File a Petition for Allowance of Appeal Nunc Pro Tunc that was docketed at 50 WM 2016.  (Resp't Ex. 39, ECF No. 13-8, pp.74-76; Resp't Ex. 40, ECF No. 13-8, pp.77-79.)  His Petition was denied on June 10, 2016.  (Resp't Ex. 41, ECF No. 13-8, p.80.)

### 2.  **Federal court proceedings**

As noted above, on September 9, 2009, Petitioner was arrested by federal authorities pursuant to an arrest warrant on a federal indictment entered in this Court at Criminal Case No. 08-374.  *See* United States v. Johnson, 2:08-cr-374, ECF Nos. 205, 273 (W.D. Pa.).  The government's motion to detain Petitioner pending those proceedings was granted following a detention hearing on September 14, 2009.  Id., at ECF No. 292; *see also* (Pet's Ex. 1, ECF No. 51-1, p.3.)  During the time that Petitioner was detained in federal custody, he was borrowed by the Commonwealth of Pennsylvania pursuant to a federal writ of habeas corpus *ad prosequendum* so that his trial proceedings in his state court criminal case could conclude.  He was then returned to federal authorities and eventually proceeded to trial in his federal criminal case where he was found guilty by a jury on April 17, 2012.  Id., ECF No. 809.  On July 30, 2013, he was sentenced to term of imprisonment of 300 months, with 15 months to be concurrently served with the undischarged term of his imprisonment at CC No. 200804649 in the Allegheny Court of Common Pleas.  Id., ECF No. 957.  Petitioner was committed into the Federal Bureau of Prisons to begin serving his federal sentence on August 26, 2013.  (Pet's Ex. 8, ECF No. 51-1, p.36.)  According to his federal criminal case docket, Petitioner still remains in the custody of the Federal Bureau of Prisons.

### 3.  **Instant habeas proceedings**

For purposes of the prisoner mailbox rule, the instant Petition for Writ of Habeas Corpus ("Petition" or "habeas petition") was submitted for filing on August 15, 2016.  (ECF Nos. 1-13, 6.)  Respondents filed an Answer to the Petition on March 13, 2017.  (ECF No. 13.)  On December 12, 2017, Respondents were ordered to file a brief indicating whether Petitioner was still in custody pursuant to his state court judgment on the day he filed his Petition in this case.

(ECF No. 20.)  Respondents filed their response on December 21, 2017, and Petitioner, on his own initiative, filed a response on January 9, 2018.  (ECF Nos. 21, 22.)  On January 22, 2018, this Court entered a Memorandum Opinion and Order dismissing the Petition for lack of jurisdiction finding that Petitioner was not in custody pursuant to his challenged state court judgment of sentence on the day he filed his Petition in this case.  (ECF No. 23.)  Petitioner appealed, and the Third Circuit granted a certificate of appealability on the issue of whether this Court erred in determining that Petitioner was not in custody when he filed his Petition.  *See* Johnson v. Warden McDowell FCI, No. 18-1241 (3d Cir. Oct. 17, 2018).  On November 26, 2019, the Third Circuit found the record insufficient to answer whether Petitioner was in custody and therefore vacated this Court's order and remanded so that this Court could hold an evidentiary hearing on the issue.  (ECF No. 27-2.)

On January 21, 2020, this Court entered an order scheduling a hearing in this matter for February 19, 2020.  (ECF No. 31.)  The Court instructed the parties to be prepared to argue the issue of whether this Court has jurisdiction to hear the habeas petition in this case, but in particular, instructed Petitioner to be prepared to demonstrate facts supporting jurisdiction.  Id. The Court also stated that if, after the hearing, the Court concluded that Petitioner had satisfied his burden then the Court would consider Respondents other grounds for dismissal of the habeas petition including, but not limited to, the timeliness of the Petition under the statute of limitations.  Id.

At the request of the parties, the Court converted the scheduled hearing into a status conference.  (ECF Nos. 32, 33.)  On February 19, 2020, this Court held a telephone status conference at which time it scheduled an evidentiary hearing for April 8, 2020, and Petitioner was ordered to file a brief addressing certain procedural issues, including the timeliness of his

8

Petition, by March 16, 2020.  (ECF No. 35.)  On March 16, 2020, Petitioner filed the Brief along with a Motion for Discovery, wherein he sought specific information related to a claim of actual innocence.  (ECF Nos. 36, 37.)  On April 20, 2020, Respondents filed their Reply to Petitioner's Brief.  (ECF No. 39.)  Respondents also filed a Reply to Petitioner's Motion for Discovery on March 23, 2020.  (ECF No. 41.)  On March 25, 2020, the Court denied without prejudice Petitioner's Motion for Discovery.  (ECF No. 42.)  On March 31, 2020, Petitioner filed an Answer to Respondents' Reply dated March 20, 2020.  (ECF No. 43.)

Again, at the request of the parties, the evidentiary hearing that was scheduled for April 8, 2020 was converted into a telephone status conference and the evidentiary hearing was rescheduled for June 16, 2020.  (ECF Nos. 44-46.)  The Court instructed the parties that it would hear argument as to the actual innocence discovery requested by Petitioner at the hearing.  (ECF No. 46.)

The evidentiary hearing was held on June 16, 2020, at which time the Court heard testimony from Mr. Anthony Stair, a Records Specialist from the Pennsylvania Department of Corrections.  The Court also heard argument from the parties on the issue of whether Petitioner was in custody on August 15, 2016, and argument on Petitioner's renewed Motion for Discovery.  (ECF No. 50.)  Supplemental briefing was submitted by Petitioner on June 30, 2020, and a Reply brief was submitted by Respondents on July 14, 2020.  (ECF Nos. 51, 52.)

**B.  Discussion**

**1.  Jurisdiction**

As noted above, the Third Circuit remanded this case so that this Court could hold an evidentiary hearing on the question of whether Petitioner was in custody at the time he filed his Petition in this case on August 15, 2016.  Said hearing was held on June 16, 2020.

"A federal court has jurisdiction to hear a habeas petition only if the petitioner was 'in custody pursuant to the judgment of a State court' when the petition was filed." Piasecki v. Court of Common Pleas, 917 F.3d 161, 165-66 (3d Cir. 2019) (quoting 28 U.S.C. § 2254(a)). For there to be jurisdiction, the petitioner must be "'in custody' that arises 'pursuant to the judgment of a state court' that is under attack." Id. at 166. "Thus, custody is the passport to federal habeas corpus jurisdiction." United States ex rel. Dessus v. Pennsylvania, 452 F.2d 557, 560 (3d Cir. 1971). The Third Circuit has explained that "[i]n making a custody determination, a court looks to the date that the habeas petition was filed." Barry v. Bergen County Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997). See also Federal Habeas Manual § 1:4 ("In order to satisfy the custody requirement, the petitioner must be in custody at the time the petition is filed in federal court.") (citing Spencer v. Kemna, 523 U.S. 1, 7 (1998)). Accordingly, for this Court to have jurisdiction, Petitioner must have been in custody pursuant to his state court criminal judgment on August 15, 2016.

At the hearing held on June 16, 2020, Petitioner presented testimony from Mr. Anthony Stair, a Records Specialist from the Pennsylvania Department of Corrections, and he also introduced eleven exhibits into the record. See ECF No. 51-1. Mr. Stair testified that he was asked in March 2020 to determine whether Petitioner's three to six-year sentence originally imposed on July 13, 2010, and reimposed on April 25, 2013, at No. CC 200804649, had expired. He testified that he performed the calculation in 2020 because the Department of Corrections had no previous record of Petitioner's state sentence.[5] Mr. Stair testified that Petitioner's controlling

---

[5] At this point the Court is constrained to point out that the reason Petitioner's state sentence was not computed until March 4, 2020 was because, in the Court's opinion, Petitioner simply fell through the cracks until the issue with his sentence was brought to light through this case.

minimum date for his three to six-year sentence would have been July 12, 2013, and his controlling maximum date would have been July 12, 2016.  In explaining how he computed Petitioner's sentence to have fully expired on July 12, 2016, Mr. Stair testified that Petitioner was given credit for the one day he spent in the Allegheny County Jail on April 6, 2007, and credit for all time he spent in custody starting from July 13, 2010, the date his sentence was originally imposed, until his maximum six-year sentence expired on July 12, 2016.

The exhibits Petitioner introduced at the hearing demonstrate that Petitioner was in primary federal custody from the time he was arrested by federal authorities on September 9, 2009, until present.  Although Petitioner's state sentence was imposed on July 13, 2010, and reimposed on April 25, 2013, with credit for 1,019 days, Petitioner has not been in primary state custody since he was released from the Allegheny County Jail on April 6, 2007, and therefore, the exhibits reflect that Petitioner served the entirety of his state sentence in primary federal custody with the exception of one day, April 6, 2007.

The Court recognizes that at the time it issued its previous Order of dismissal for lack of jurisdiction, the record may not have been entirely clear whether Petitioner had time left to serve on his state sentence.  Today, however, it is clear that Pennsylvania has considered Petitioner's state sentence fully served as of July 12, 2016, at the latest, having elected to award Petitioner credit for time he spent in federal custody as a pretrial detainee[6] and then credit for the time he was incarcerated in the Federal Bureau of Prisons by running his sentence concurrent to his federal sentence.  While the Court recognizes that there may be unresolved questions about this

---

[6] According to the Federal Bureau of Prisons Sentence Monitoring Computation Data sheet, Petitioner was also given credit against his federal sentence for the time that he was in federal pretrial detention from September 9, 2009, through July 29, 2013.  (Pet's Ex. 8, ECF No. 51-1, p.37.)

post hoc sentence computation performed by the Pennsylvania Department of Corrections,[7] the fact is that, today, the record is clear that Petitioner was not "in custody" pursuant to his state court judgment of sentence when he filed his Petition on August 15, 2016, and there is no likelihood of future custody for this judgment of sentence now that Pennsylvania has deemed it to have fully expired.

Petitioner seemingly suggests that the Court should not hang its jurisdictional hat on how the Pennsylvania Department of Corrections computed his sentence on March 4, 2020, but rather look to whether he believed he still had remaining time to serve on his Pennsylvania sentence at the time he filed his Petition in this case.  Indeed, he states that it was not clear how the Pennsylvania Department of Corrections would calculate his state sentence until it did so on March 4, 2020.  Specifically, he argues that at the time he filed his Petition, he was still technically subject to his state sentence and had a reasonable basis to believe that Pennsylvania would require him to serve additional time in prison at the conclusion of his federal sentence.  To support his argument that the Court has jurisdiction he relies on Frazier v. Wilkinson, 842 F.2d 42 (2nd Cir. 1987) and Duarte v. Hurley, 43 F.Supp.2d 504 (D.N.J. 1999).  In Frazier, the Second Circuit held that a petitioner is "in custody" to challenge a consecutive sentence imposed by another state for which no detainer had been issued where "there is a reasonable basis to apprehend that the jurisdiction that obtained the consecutive sentence will seek its enforcement." 842 F.2d at 45.  Relying on this "reasonable basis test" announced in Frazier, the Duarte court similarly concluded that the petitioner in that case could challenge his consecutive New Jersey

---

[7] For example, why the Pennsylvania Department of Corrections elected to run Petitioner's state sentence concurrent to his federal sentence, which did not exist at the time Petitioner was sentenced by the state court on July 13, 2010, or at the time his sentence was reimposed on April 25, 2013.

sentences even though New Jersey had not lodged a detainer against him because there was no indication that New Jersey would not seek enforcement of its sentences.  43 F.Supp.2d at 508.

This Court finds that <u>Frazier</u> and <u>Duarte</u> are inapposite for two reasons.  First, Pennsylvania did not impose a consecutive sentence of imprisonment to Petitioner's federal sentence because his state sentence was imposed first, and second, at the time the Petition was filed in this case there was no reasonable basis to believe that Pennsylvania would seek future custody of Petitioner.  This is because at the time his sentence was reimposed in state court on April 25, 2013, Petitioner was, in fact, in primary federal custody, and despite this, Judge Cashman elected to give Petitioner credit for all time he had spent in federal custody as a pretrial detainee since July 13, 2010, the effective date of his original sentence.  On the facts here, there was no reason to expect that credit would cease upon the imposition of Petitioner's federal sentence on July 30, 2013.  As such, despite what Petitioner has presented to be speculation and uncertainty as to the status of his state sentence at the time he filed his Petition on August 15, 2016, there is nothing in the record that would lead the Court to find that, before Mr. Stair computed Petitioner's sentence on March 4, 2020, there was a reasonable basis to apprehend that Pennsylvania would seek custody of Petitioner upon the conclusion of his federal sentence.

Nevertheless, even if there was a likelihood of such "future custody" at the time Petitioner filed his Petition on August 15, 2016,[8] there is a significant procedural bar to review of Petitioner's habeas claims.  That is, all of the claims are time-barred under the statute of

---

[8] The Court recognizes that Petitioner may have believed, reasonably or unreasonably so, that he would not continue to receive credit against his state sentence once he was sentenced in federal court and that Pennsylvania would file a detainer seeking his return following the expiration of his federal sentence.

limitations.  Accordingly, in the event that the appellate court were to find that the Court does

have jurisdiction, this Court will proceed to the following analysis in the alternative.

### 2.  <u>Statute of Limitations</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-

year limitations period for state prisoners seeking federal habeas review.  It is codified at 28

U.S.C. § 2244(d) and it provides as follows:

(1)    A 1-year period of limitation shall apply to an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a State
court.  The limitation period shall run from the latest of –

    (A)    the date on which the judgment became final by the conclusion of
direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created
by State action in violation of the Constitution or laws of the
United States is removed, if the applicant was prevented from
filing by such State action;

    (C)    the date on which the constitutional right asserted was initially
recognized by the Supreme Court, if that right has been newly
recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or

    (D)    the date on which the facts supporting the claim or claims
presented could have been discovered through the exercise of due
diligence.

(2)    The time during which a properly filed application for State post-
conviction or other collateral review with respect to the pertinent judgment
or claim is pending shall not be counted toward any period of limitation
under this section.

28 U.S.C. § 2244(d).

The statute of limitations set out in § 2244(d)(1) must be applied on a claim-by-claim

basis.  <u>Fielder v. Varner</u>, 379 F.3d 113 (3d Cir. 2004), *cert denied*, 543 U.S. 1067 (2005).  In

analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year

limitations period, a federal court must undertake a three-part inquiry.  First, the court must determine the "trigger date" for the one-year limitations period pursuant to section 2244(d)(1). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2).  Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.

The Court notes that Petitioner does not assert any unlawful State created impediment to filing his Petition and also notes that none of the claims discernable in it are based on newly enunciated constitutional rights or based on facts that were not discovered until a later date.[9] Consequently, the "trigger date" for Petitioner's one-year limitations period for all of his claims is the date on which his judgment of sentence became final.

In this case, Petitioner's judgment of sentence became final on December 12, 2012, ninety days after the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal and the time for filing a timely Petition for Writ of Certiorari to the United States Supreme Court expired.  *See* Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000) (noting that a judgment becomes "final" at the conclusion of direct review or the expiration of time for seeking such review).  Thus, absent any tolling for "properly filed" applications for post-conviction relief, Petitioner had until December 12, 2013 to file a timely federal habeas petition challenging his judgment of sentence.  Since the Petition in this case was not filed until August 15, 2016, the Court must next determine whether Petitioner can take advantage of the tolling provision in section 2244(d)(2).

_____

[9] Petitioner raises claims of ineffective assistance of preliminary hearing counsel, trial counsel and PCRA counsel; a claim of prosecutorial misconduct; and a claim of PCRA court error.

Section 2244(d)(2) provides that the one-year limitations period is tolled during the pendency of a "properly filed" state post-conviction proceeding.  Petitioner filed his first PCRA petition on September 17, 2012, prior to his judgment of sentence becoming final on December 12, 2012.  The record reflects that those proceedings were "properly filed," and, as such, the statute of limitations was tolled during the time they were "pending."  Following the PCRA court's denial of PCRA relief on April 9, 2013,[10] Petitioner appealed to the Superior Court who ultimately dismissed the appeal for Petitioner's failure to file an appellate brief on May 2, 2014. Petitioner did not file a timely Petition for Allowance of Appeal in the Pennsylvania Supreme Court following the Superior Court's Order, and his time to do so expired on June 2, 2014, at which point his PCRA proceedings were no longer pending.[11]  Consequently, his statute of limitations started to run the following day and it expired 365 days later, on June 2, 2015.  As previously noted, Petitioner did not file his Petition in this case until August 15, 2016, over a year later.

While it is true that Petitioner continued to file motions in the state court following the dismissal of his appeal on May 2, 2014, none of those motions tolled the statute of limitations under the AEDPA, as they were not post-conviction collateral attacks on Petitioner's judgment of sentence, or, in the case of the Motion to Consider an Intervening Change in Law, construed as a subsequent PCRA petition but found to be untimely and therefore not "properly filed."  *See*

---

[10] Notably, while the PCRA court did vacate Petitioner's sentence and issue a new order of sentence with regard to the RRI issue on April 25, 2013, the Superior Court explained in its Opinion dated February 19, 2016 that such an action by the PCRA court did not alter the date on which Petitioner's judgment of sentence became final nor did it "reset" the clock for purposes of a subsequent PCRA petition.  (Resp't Ex. 38, ECF No. 13-8, p.66.)  Nevertheless, even if it had reset the clock, the instant Petition would still be untimely.

[11] Thirty days from May 2, 2014 was June 1, 2014, which was a Sunday.

Artuz v. Bennett, 121 S. Ct. 361, 364 (2000) (An application for state post-conviction relief or collateral review is "properly filed" as required to toll AEDPA's statute of limitations period for filing a federal habeas petition "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings[,]" notwithstanding the substance or merits of the claims contained within the application itself.  These "applicable laws and rules governing filings" usually prescribe "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee . . . ."); *see also* Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (a federal court is bound by a state court's finding that a petitioner's PCRA petition was untimely, even where the petitioner sought to pursue his PCRA petition under a statutory exception to the PCRA's time bar, and an untimely PCRA petition is not "properly filed" and therefore does not toll AEDPA's statute of limitations).  Therefore, the pendency of those proceedings cannot be tolled.

Having failed to meet AEDPA's one-year statute of limitations, the Petition can only be saved by the application of equitable tolling or the Supreme Court's recognized fundamental miscarriage of justice exception.  *See* Holland v. Florida, 560 U.S. 631 (2010) (addressing circumstances in which a federal habeas petitioner could invoke the doctrine of "equitable tolling"); *see also* McQuggin v. Perkins, 569 U.S. 383 (2013) (holding that a showing of actual innocence provides an equitable exception to AEDPA's statute of limitations).  Perhaps recognizing the untimeliness of the Petition, Petitioner sets forth a claim of actual innocence in his Brief in Support of the Petition that was filed on March 16, 2020.  (ECF No. 36.)  The evidence of actual innocence to which Petitioner relies, as well as the requests made in his renewed Motion for Discovery, will be addressed in the next section.

### 3.  **Actual Innocence and Motion for Discovery**

The Supreme Court has held that a credible showing of actual innocence can overcome AEDPA's one-year statute of limitations for filing a habeas petition.  McQuiggin, 569 U.S. at 397.  "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."  Id. at 392 (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)).  However, to invoke this exception, the Supreme Court has stressed that a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of [ ] new evidence."  Id. at 399 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).  It further stressed the demanding nature of this standard by stating that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"  Id. at 401 (quoting Schlup, 513 U.S. at 316)).

In support of his actual innocence argument, Petitioner relies on the following evidence: (1) an affidavit from Tawnya Robinson, (2) history of misconduct related to the truthfulness of Pittsburgh Police Officer Anthony Scarpine, and (3) inconsistences between Petitioner's police report and Officer Scarpine's trial testimony.  To understand how Petitioner claims that each piece of evidence supports his claim of innocence, the Court will first recite a summary of the evidence that was introduced at Petitioner's trial, which summary was set forth by Judge Cashman in the trial court's opinion dated September 27, 2011.

> The evidence presented at trial came from the testimony of three City of Pittsburgh police officers as well as certain stipulations reached by the parties. Officer Anthony Scarpine, (hereinafter referred to as "Scarpine"), testified on the first day of the non-jury trial.  Scarpine testified that he was on patrol in a marked police car on April 5, 2007, at approximately 5:50 p.m., when he observed

[Petitioner] and a female subject, Tawnya Robinson, (hereinafter referred to as "Robinson"), both of whom were known to him. Scarpine observed Robinson with a quantity of money in her hand. Scarpine's partner, Officer Antwan Cain, (hereinafter referred to as "Cain"), left his vehicle to take a different position to observe these individuals. Cain advised Scarpine that Robinson and [Petitioner] had moved to a different location on Middle Street in the City of Pittsburgh. As Scarpine came around the corner onto Middle Street, he observed [Petitioner] with a white bag in one hand handing what appeared to be a small piece of crack cocaine to Robinson. Scarpine estimated that he was about twenty feet away from [Petitioner] at this time. Scarpine testified that Robinson noticed him initially and said something, causing [Petitioner]'s head to jerk around. [Petitioner] then started to walk away. Scarpine advised Cain of what he had seen. [Petitioner] was between Cain and Scarpine at this time. Scarpine announced to Cain that [Petitioner] was under arrest, prompting [Petitioner] to start running. [Petitioner] initially evaded the officers, but was later seen by Scarpine on Virgil Way. Scarpine yelled for [Petitioner] to stop at this time and observed a bag in [Petitioner]'s hand. [Petitioner] threw the bag down on Virgil Way and ran, with Scarpine following. Scarpine testified that all of these activities took place in the daylight. Scarpine radioed for assistance, and other officers apprehended [Petitioner]. Once secured, Officer McClain, (hereinafter referred to as "McClain"), and Scarpine retraced Scarpine's steps onto Virgil Way and located the baggie where [Petitioner] had thrown it. The item recovered was submitted to the Allegheny County Crime Lab and the parties stipulated that at Laboratory No. 07LAB03241, the one knotted ripped baggie recovered contained 8.08 grams of cocaine in the base form.

The non-jury trial in this matter was continued for nearly a year and resumed on April 19, 2010. On that date Cain testified. Cain testified that he observed the female exhibit money to [Petitioner] and then pull that money back. The female gave [Petitioner] the money, and the female received something in exchange that Cain could not identify. Cain testified that he attempted to place [Petitioner] under arrest but that [Petitioner] took off and ran. McClain also testified on April 19, 2010. McClain testified to recovering the baggie with the crack cocaine in the area that Scarpine advised him that [Petitioner] had thrown this substance. The parties also stipulated that in a search incident to arrest, eight hundred eighty-nine dollars ($889.00) was recovered from [Petitioner]'s right front pants pocket and a black cell phone was recovered from his right jacket pocket.

(Resp't Ex. 10, ECF No. 13-2, pp.6-8) (internal citations to the trial transcript omitted).

First, Petitioner has submitted an affidavit from Tawyna Robinson, who did not testify at

Petitioner's trial but states that she was willing to do so and would have testified that she was

talking to Petitioner on the day in question, but she did not buy any drugs from him.  According to Robinson, Officer Scarpine spoke to Petitioner and then Petitioner ran down Middle Street. She then walked away.  She stated that she had been arrested by Officer Scarpine several times in the past and she would have been arrested on that day had she really purchased drugs from Petitioner.  (ECF No. 36-1, pp.18-19.)

Second, Petitioner has submitted evidence of what he claims is a history of misconduct on behalf of Officer Scarpine.  Specifically, he states that on November 12, 2010, Officer Scarpine was charged by the Allegheny County District Attorney's Office with unsworn falsification to authorities, obstruction of administration of law, official oppression and criminal conspiracy.  Id., pp.80-82.  The charges stemmed from an incident in which Officer Scarpine and another officer, Kenneth Simon, arrested two men for an alleged drug sale at a car wash in July 2010.  Despite the fact that police found drugs on both men when they were taken into custody, video surveillance from the car wash demonstrated that the two men did not interact with each other and no drug transaction occurred.  Officer Scarpine later said that he did not see a drug transaction and was just trusting what his partner, Officer Simon, said he witnessed.  Id., pp.25-26, 27-28.  Both officers were suspended, but at a preliminary hearing on January 7, 2011, a judge dismissed the charges against Officer Scarpine.  Id., pp.80-82.  Officer Simon, who was charged with two counts of perjury, two counts of false swearing, two counts of unsworn falsification to authorities and other charges, was acquitted of the charges against him after a jury trial.  Id., pp.27-28, 38.  The City of Pittsburgh subsequently settled a civil rights lawsuit stemming from the incident at the car wash after this Court denied a motion for summary judgment in a case brought by one of the two individuals arrested.  Id., pp.29, 35-55.

In December 2011, Allegheny County District Attorney Stephen A. Zappala, Jr. said that his office had reviewed 31 criminal cases involving Officers Scarpine and Simon and 17 were allowed to remain because they included separate physical evidence or testimony that corroborated what the officers claimed.[12]  The office withdrew criminal cases against 13 individuals whose charges were based primarily on the word of Officer Simon and Officer Scarpine, and the office asked that a verdict be overturned in another case where the defendant had already been convicted in a jury trial.  Id., pp.27-28.

Petitioner points to a second incident of misconduct by Officer Scarpine that resulted in discipline for an incident that occurred in May 2010 in which he swore out a false affidavit for charges of witness intimidation and assault.  In that case, the city's Office of Municipal Investigations sustained a complaint filed by a woman who was alleged by Officer Scarpine to have thrown an elbow/forearm into the witness's chest/stomach area after the office reviewed video surveillance of the incident and determined that she did not do so and that Officer Scarpine never observed the incident.  Id., p.30.  However, another officer, Officer Honick, testified that it was at his behest that Officer Scarpine file the charges against the woman.  Id., p.31.  That case also produced a civil rights lawsuit that the city settled.  Id., pp.31-32.

Finally, the third piece of evidence Petitioner relies on to support his actual innocence argument is information in the police report that is alleged to be inconsistent with Officer Scarpine's trial testimony and which Petitioner maintains was not adequately highlighted at trial. For example, according to the police report, Officer Scarpine stated that he and Officer Cain were in separate police cars, with Officer Scarpine in a marked car and Officer Cain in an

---

[12] It is unclear whether Petitioner's case was one of the 31 that had been reviewed, or whether the only cases that were reviewed involved both Officers Scarpine and Simon.

unmarked car.  The report also states that Officer Cain saw Robinson give Petitioner money and that Officer Scarpine learned of this from Officer Cain.  Id., pp.4-5.  Petitioner maintains that the inconsistencies raise questions about the accuracy and veracity of the officers' recollections.

In sum, Petitioner maintains that he is actually innocent, and he asserts that no reasonable juror would have voted to convict him had Robinson testified at trial and had evidence of Officer Scarpine's history of untruthfulness been introduced at trial as well.  The Court disagrees.

This is not the first time that Petitioner has argued that he is entitled to some form of relief due to Officer Scarpine's history of misconduct.  For example, in his PCRA petition, Petitioner argued that his trial and appellate counsels were ineffective in not contesting the credibility of Officer Scarpine in light of the charges that were filed against him in November 2010.  However, Judge Cashman wrote that he "was well aware of the allegations made against Officer Scarpine and the criminal charges filed against him and the Federal Civil Rights lawsuit filed against him as a result of other individuals asserting that he had perjured himself in order to obtain convictions for drug trafficking against them" but noted that the Commonwealth's case was not predicated upon the testimony of only Officer Scarpine.  Rather, he pointed out, it was predicated upon the cumulative testimony of all three officers, specifically Officer Cain who watched the interaction between Petitioner and Robinson and observed Robinson holding cash and giving it to Petitioner in exchange for something that he could not identify and Officer McClain who, along with Officer Scarpine, searched the area where Petitioner was seen throwing an object and recovered a bag containing crack cocaine.  (ECF No. 13-6, pp.14-18.) The evidence introduced at trial, which included the testimony of all three officers, was found sufficient to sustain Petitioner's convictions on appeal.

Petitioner does nothing more than once again attack Officer Scarpine's credibility with evidence of misconduct directed at his truthfulness, most of which is the same evidence that was already considered by Judge Cashman in Petitioner's PCRA proceedings.  However, such evidence does not establish Petitioner's innocence.  *See* Bousley v. United States, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency.").  Indeed, had it been introduced at Petitioner's trial, it would have done nothing more than raise questions as to Officer Scarpine's credibility, which Judge Cashman could have considered along with all the other evidence and then still reached the same verdict.  *See*, *e.g.*, Holmes v. Hardy, 608 F.3d 963, 968-69 (7th Cir. 2010) ("troubling" new evidence impugning the credibility of state's witness did not establish actual innocence, since at best it established a "mere possibility" that a jury presented with the evidence would have exonerated the petitioner, "not a probability, as is required."); Coleman v. Thompson, 798 F.Supp. 1209, 1216-17 (W.D. Va. May 13, 1992) (The petitioner's evidence attacking the credibility of witnesses did not show his "actual innocence" and had it been introduced at trial "it would have raised nothing more than credibility questions which the jury could still have resolved against [petitioner] when considering all the probative evidence."); *see also* Parks v. Bobby, No. 4:07CV03592, 2011 WL 3473311, at *8 (N.D. Oh. Aug. 9, 2011).  And, it is the totality of all the other evidence introduced at his trial that Petitioner seemingly would like for this Court to ignore.  Even taking into account the affidavit provided by Tawyna Robinson, which, it is noted, was provided over 13 years after Petitioner's arrest, the proffered evidence that Petitioner claims supports his innocence does not undermine confidence in the accuracy of his conviction and falls far short of meeting the standard for which the gateway should open under the Supreme Court's stringent actual innocence exception.  *See* Schlup, 513 U.S. at 332

23

(holding that courts "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence" when considering claims of innocence).  For this reason, the Court finds that, even if jurisdiction exists to consider the Petition, it is nonetheless subject to dismissal because it was untimely filed.[13]

Finally, because the Court finds that the discovery sought by Petitioner in his Motion for Discovery, which was renewed at the hearing on June 16, 2020, is not directed at proving his actual innocence, but at attacking Officer Scarpine's credibility or discovering other perceived constitutional violations, the Court will deny the Motion.  *See*, *e.g.*, Foster v. United States, No. 498CV1186DJSDDN, 2001 WL 1863566, at *6 (E.D. Mo. Aug. 16, 2001).

### C.  Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  As provided for in 28 U.S.C. § 2253, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the

---

[13] Lastly, the Court will note that even if the Petition was timely filed, all of Petitioner's claims would be subject to dismissal because they are procedurally defaulted for substantially the reasons argued by the Respondents in their Answer filed on March 13, 2017.  (ECF No. 13.)

denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.  There is no basis on which to issue a certificate of appealability.  Accordingly, a certificate of appealability will be denied.  A separate order will issue.

Dated:  November 23, 2020.

Lisa Pupo Lenihan
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALONZO LAMAR JOHNSON, | ) | |
| | ) | Civil Action No. 16 – 1250 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| BARBARA RICKARD and THE | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

**AND NOW**, this 23rd day of November, 2020, and for the reasons stated in this Court's Memorandum Opinion filed contemporaneously herewith,

**IT IS HEREBY ORDERED** that Petitioner's Motion for Discovery (ECF No. 37) that was renewed at the hearing on June 16, 2020 (ECF No. 50) is **DENIED**.

**IT IS FURTHER ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 6) is dismissed for lack of jurisdiction, and, in the alternative, dismissed as untimely.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

Cc:    Counsel of Record
       (Via CM/ECF electronic mail)